```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EDGAR SANCHEZ,

                          Plaintiff,

        -against-

EZ PARKING CORPORATION, EK PREMIER
SERVICES LLC, and YAN MOSHE, individually,

                          Defendants.
------------------------------------------------------------------X
```

Case No.: 1:23-cv-4052 (AMD) (VMS)

**DEFENDANT EK PREMIER SERVICES LLC'S LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendant EK Premier Services LLC (hereinafter "Defendant" or "EK Premier"), by its attorneys, Sage Legal LLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") and Rules 7.1 and 56.1 of the Local Rules for the Eastern District of New York (hereinafter "Local Rule" or "LCR"), hereby respectfully submits this Rule 56.1 Statement of Material Facts in Support of their Motion for Summary Judgment (hereinafter "SMF"), as to which Defendant EK Premier respectfully contends there are no genuine issue to be tried.

**EK PREMIER'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF**

**Defendants EZ Parking, EK Premier, and Moshe**

1. 6336 99th Street, Rego Park, NY 11374 (the "Building") houses a condominium building with commercial and residential units as well as a parking garage; it is not located in a tourist destination and is surrounded mostly by apartment buildings. Sanchez Dep. 150:18-24.[1]

2. EZ Parking Corporation ("EZ Parking") was a domestic business corporation organized under the laws of the State of New York and is authorized to do business in the State of New York. See Declaration of Emanuel Kalendarev ("Kalendarev Decl.") ¶ 3.

---

[1] All references to "Sanchez Dep." refer to the Deposition of Edgar Sanchez.

    3. EZ Parking operated a parking garage and did business as EZ Parking prior to March 2021. Kalendarev Decl. ¶ 4.

    4. Roman Yunusov ("Roman") was the sole owner, member, and operator of EZ Parking, which leased the parking garage at the Building prior to March 2021. Kalendarev Dep. 14:1-22.[2]

    5. Emanuil Kalendarev ("Emanuel") owns Rego Park Seniors Club which operates at the Building since in or about 2016 and caters to the elderly and underprivileged people with emotional, mental, and physical problems. Kalendarev Dep. 8:12-9:16.

    6. EK Premier is a limited liability company organized under the laws of the State of New York and is authorized to do business in the State of New York. Kalendarev Dep. 19:9-20:3.

    7. Emanuel was the sole owner and member of EK Premier, which was a company created for valet parking services in 2021. Kalendarev Dep. 10:17-11:3, 19:24-20:1, 83:6-7, 122:22-25.

    8. EK Premier operated a parking garage and did business as EK Premier Services LLC since in or about March 2021. Kalendarev Dep. 21:2-5.

    9. Plaintiff Edgar Sanchez ("Sanchez") worked at EZ Parking when Emanuel sought to take over the lease, and Sanchez introduced himself to Emanuel as the manager of the parking garage. Kalendarev Dep. 14:23-16:17.

    10. Emanuel was the manager of the restaurant called Millenium in the building before he obtained a lease for the parking garage. Sanchez Dep. 91:6-9.

    11. Prior to his taking over the lease for the parking garage through EK Premier, Emanuel did not have any control, oversight, or direction over EZ Parking; he only parked his vehicle at the parking garage. Sanchez Dep. 136:7-14.

---

[2] All references to "Kalendarev Dep." refer to the Deposition of Emanuil Kalendarev in support of Defendants' motion for summary judgment.

2

12. Sanchez first began working with Emanuel in March 2021.  Sanchez Dep. 92:13-15.

13. Sanchez would discuss pay with Emanuel.  Sanchez Dep. 92:19-22.

14. Yan Moshe ("Moshe") was the landlord of the Building that EZ Parking and EK Premier rented space from.  Kalendarev Dep. 11:4-6, 15:15-16:14, 17:18-19:8.

**Plaintiff Edgar Sanchez**

15. Sanchez arrived to the United States in May 2009.  Sanchez Dep. 20:13-17.

16. Before working at the parking garage that is the subject of this case, Sanchez worked at a supermarket; he continued working at the supermarket while working at the parking garage.  Sanchez Dep. 33:23-34:13.

17. Sanchez is no stranger to being in business for himself; he had a side gig selling products from Manhattan at flea markets on Long Island on Sundays.  Sanchez Dep. 93:12-21.

18. He currently works as a driving instructor where he decides his schedule.  Sanchez Dep. 19:13-20, 41:9-23, 42:8-14, 42:21-43:15, 102:22-103:3.

19. Sanchez was initially paid at $8.50 or $9.00 per hour on a weekly basis at the parking garage.  Sanchez Dep. 37:14-25.

20. Sanchez never signed any new hire paperwork at the parking garage.  Sanchez Dep. 98:3-8, 102:13-16.

21. Sanchez did not receive any employment benefits such as paid vacation or any commission.  Sanchez Dep. 102:3-12.

22. In the beginning, Sanchez was paid solely by check after receiving pay in cash for approximately ten (10) days; later on, he was paid for forty (40) hours by check and the remainder in cash.  Sanchez Dep. 38:2-8, 38:20-25, 39:11-22, 85:23-86:6.

23. When he was first hired, Sanchez was informed that he was being given the opportunity to manage this new garage.  Sanchez Dep. 45:11-46:8.

24. From the beginning of his engagement with the parking garage, Sanchez worked with Cesar and Roman until March 2021.  Sanchez Dep. 48:8-22.

25. Roman informed Sanchez that he trusts him to do the right thing in managing the parking garage.  Sanchez Dep. 50:9-18.

26. At the time Roman came along to replace Cesar, the name of the parking garage changed from CMJ Parking to EZ Parking.  Sanchez Dep. 53:6-13.

27. Sanchez complained that he was not being properly ever since Roman replaced Cesar.  Sanchez Dep. 53:16-54:2, 62:7-19, 88:8-17.

28. At all relevant times, Roman set Sanchez's schedule, method and timing of payment, and would given Sanchez his pay.  Sanchez Dep. 56:17-57:5.

29. Sanchez mostly worked nights when he first started working at the garage, while another individual named Carlos worked during the day.  Sanchez Dep. 58:17-18, 57:15-58:2, 58:20-23, 68:22-70:4.

30. The patrons of the parking garage were local residents or employees of the building, which included a therapy business, CitiMed, Millenium restaurant, and a synagogue.  Sanchez Dep. 64:3-65:15.

31. Sometimes, patrons of the parking garage came in vehicles with out-of-state license plates.  Id; Sanchez Dep. 70:5-17, 71:14-16, 71:23-72:3, 75:3-4, 148:23-25.

32. Sanchez's regular shift would be from 7:00 PM to 7:00 AM.  Sanchez Dep. 68:16-21.

33. Sanchez was paid $12.00 per hour since in or about 2013 or 2015, partly in cash and partly by check.  Sanchez Dep. 79:25-80:13, 128:16-18, 140:25-141:5.

34. Sanchez received $480.00 by check for forty (40) hours of work, plus approximately $500.00 or more in cash, with $1,008.00 per week being the normal pay for a full week of work.  Sanchez Dep. 127:3-9, 128:15, 145:5-146:4; Kalendarev Dep. 16:18-25 ($1,080.00), 28:20-24 (same), 86:7-14 ("Our agreement with him was he was the manager of the space. Whether he was working or somebody covered him, he wanted $1,080 a week"), 111:13-112:15 (same).

35. The parking garage had approximately eighty (80) total spots and he would park approximately thirty to forty (30-40) cars per day.  Sanchez Dep. 70:18-71:11.

36. The price for monthly parkers was $350 per month (except for ten spots at $175.00 per month for doctors with offices in the building), but Teslas were charged $450 per month, and there were ten (10) Teslas.  Sanchez Dep. 85:12-18, 154:5-7, 154:12-18.

37. As for daily parkers, they were charged $8.00 for up to two (2) hours and $18.00 for the entire day.  Sanchez Dep. 85:19-86:2.

38. Customers paid equally between cash and check for parking.  Sanchez Dep. 104:14-21.

39. Sanchez's duties including receiving cars, parking them, being aware of their location, taking care of the garage, charging people for parking, collect all monies, and close the register.  Sanchez Dep. 76:7-13, 76:17-21.

**Sanchez was in Business for Himself at the Parking Garage**

40. When Sanchez did not want to work, went on vacation, or otherwise wanted time off for himself, he recruited other people to work for him of his own volition and paid them himself from his own funds.  Sanchez Dep. 77:18-78:23, 79:10-16, 81:25-82:17, 82:24-83:2, 92:9-12, 101:7-21, 103:23-104:6, 187:24-189:5; Kalendarev Dep. 16:25-17:17, 22:6-23:23, 23:9-20, 26:18-27:17, 28:25-29:6, 31:25-32:18, 39:9-40:25, 41:15-43:7, 87:3-16 (discussing consistent patterns of Sanchez utilizing his own employees at the parking garage, especially on weekends).

41. Roman did not interview the individuals that Sanchez hired, and Sanchez determined who would work based on their driving skills.  Sanchez Dep. 82:18-20, 103:16-22.

42. Sanchez decided when his employees would work.  Sanchez Dep. 83:24-84:7.

43. When Emanuel wanted to convert Sanchez to payment only by check, Sanchez adamantly refused because the employees Sanchez hired only wanted cash.  Kalendarev Dep. 87:17-88:17.

44. Sanchez filed suit to recover the difference between his $12.00 hourly rate and the minimum wage of $15.00.  Sanchez Dep. 114:16-115:5, 124:7-14.

45. Sanchez concedes that he did not always work eighty-four (84) hours per week because he had his employees work for him, and would call them whenever he wanted a day off.  Sanchez Dep. 115:6-116:4, 197:12-15; Kalendarev Dep. 118:14-119:1, 120:3-22.

46. Cash was not deposited into EK Premier because it went to pay Sanchez and the employee who worked during the day.  Kalendarev Dep. 52:25-54:8.

47. Sanchez stopped working at EK Premier on March 6, 2023.  Sanchez Dep. 129:23-130:2, 193:6-10, 193:15-194:14; Kalendarev Dep. 36:19-23, 73:18-22.

48. Despite working with Roman for a majority of the time he was at the parking garage, Sanchez has no good explanation for why he did not sue Roman.  Sanchez Dep. 156:9-19.

**EK Premier is Not a Covered Employer and Sanchez is Not a Covered Individual**

49. In 2021, EK Premier earned gross revenue of $104,040.00. Kalendarev Decl. ¶ 6, Ex. A (D13-D14, D217-D218, D19-D85)

50. In 2022, EK Premier earned gross revenue of $129,448.00. Kalendarev Decl. ¶ 7, Ex. B. (D15-D18, D219-D220, D86-D172).

51. In 2023, EK Premier earned gross revenue of $46,882.00. Kalendarev Decl. ¶ 8, Ex. C (D221-D222, D173-D194).

6

52. During Sanchez's entire tenure with Kalendarev at EK Premier, Sanchez did not perform any work involving or relating to the movement of persons among the United States of America ("USA") or between any States within the USA. <u>Kalendarev Decl.</u> ¶ 5.

Dated: Jamaica, New York
       March 31, 2025                               Respectfully submitted,

                                                       **SAGE LEGAL LLC**

                                                       By: <u>*/s/ Emanuel Kataev, Esq.*</u>
                                                       Emanuel Kataev, Esq.
                                                       18211 Jamaica Avenue
                                                       Jamaica, NY 11423-2327
                                                       (718) 412-2421 (office)
                                                       (917) 807-7819 (cellular)
                                                       (718) 489-4155 (facsimile)
                                                       emanuel@sagelegal.nyc

                                                       *Attorneys for Defendant*
                                                       *EK Premier Services LLC*

**VIA ECF**
Law Offices of Vincent E. Bauer
<u>Attn</u>: Vincent E. Bauer, Esq.
425 Madison Avenue, 17th Floor
New York, NY 10017
v.bauer@verizon.net

*Attorneys for Plaintiff*
*Edgar I. Sanchez*

7