# LAW OFFICES OF VINCENT E. BAUER

425 Madison Avenue, 17th floor                                                               Tel: 212-575-1517
New York, NY 10017

May 8, 2025

The Honorable Ann M. Donnelly
United States District Court, EDNY
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

Re: Sanchez v. EZ Parking, et al., 23 cv 4052

Dear Judge Donnelly:

I represent Plaintiff in the above-referenced matter. I write in response to Defendant EK Premier's May 2, 2025 letter to the Court requesting a pre-motion conference concerning its desire to move to dismiss Plaintiff's Fourth Amended Complaint.

**Request for Additional Time to Respond to the Fourth Amended Complaint**

Plaintiff does not oppose EK Premier's application for additional time to respond to the Fourth Amended Complaint.

**EK Premier's Potential Motion to Dismiss Under FRCP 12(c) Would be Futile**

EK Premier asserts that Plaintiff has not adequately pled allegations sufficient to establish coverage under the FLSA. More specifically, EK Premier suggests that Plaintiff's work at the subject parking garage did not engage him in interstate commerce. That position ignores the significant body of case law holding that parking garage employees are engaged in interstate commerce. See Pintor v. Park King at JFK, LLC, 2018 US Dist. LEXIS 28940 at *11 (EDNY Feb. 21, 2018)(finding FLSA coverage of parking garage employee because it was reasonable to infer that cars moved in parking garages were goods moved or produced in other states); Patino v. Brady Parking, Inc., 2017 US Dist. LEXIS 189218 (SDNY Oct. 31, 2017)(holding that a parking garage employee who parked cars of both in-state and out of state patrons was personally engaged in interstate commerce); Velez v. Vassallo, 203 F. Supp. 2d 312, 329 (SDNY 2002)(holding employees handling cars that were brought to public parking garages in New York City to be subject to FLSA coverage, and stating that such cars "surely epitomize goods or materials that have been moved in or produced for interstate commerce" and that "Defendants' assertion that Plaintiffs' work did not encompass the production or handling of goods for commerce is thus premised on a egregious misunderstanding, or a willful misreading of the law").

EK Premier seemingly seeks to circumvent applicable case law by arguing that the subject parking garage is a "local" parking garage that stores only cars owned by local residents. That assertion, however, is to be found nowhere in, and in fact is flatly contradicted by, the specific

factual allegations in the Fourth Amended Complaint ("FAC"), and should therefore be disregarded. The FAC details the significant number of daily parkers at the subject garage, as well as additional people who park their cars on occasion in connection with events. Plaintiff specifically alleges: "At all times relevant to this action, EK Premier was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. In that regard, the parking garage operated by EK Premier involved the parking of automobiles that were, upon information and belief, produced for commerce in states other than New York. EK Premier's parking garage also stored and moved automobiles that were moved from states other than New York to New York by people visiting New York for the day and/or attending events in the state, and vehicles that travelled to New Jersey and Connecticut, among other states. More specifically, Plaintiff noticed license plates on cars parked at the garage which were not New York plates several times per week, and also spoke with friends and relatives of tenants of the building in which the parking lot is located, who informed Plaintiff that they lived in states other than New York. In all, those relatives parked at the garage on average 5-6 times per month."

FAC ¶16. Thus, the parking garage is not local at all. Additionally, EK Premier's operations, as described above, subject it to coverage under an enterprise theory. Marshall v. Victoria Transp. Co., 603 F. 3d 1122, 1124 (5th Cir. 1979)(holding that purchasing cars that were previously moved in interstate commerce satisfied the minimal effect requirement for FLSA coverage and stating "No [d]e minimis rule applies to the Act; any regular contact with commerce, no matter how small, will result in coverage")(citing Mabee v. White Plains Publishing Co., Inc., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946); Schultz v. Kip's Big Boy, Inc., 431 F.2d 530 (5th Cir. 1970); Mitchell v. Independent Ice & Cold Storage Co., 294 F.2d 186 (5th Cir. 1961), Cert. denied, 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed.2d 386 (1962).

Plaintiff has also adequately alleged that EK Premier had annual revenues of over $500,000 per year. In that regard, Plaintiff details in the FAC, based upon his personal observations, how EK Premier's claims regarding its revenues are false, and in fact EK Premier generated approximately $600,000 per year during each of the years 2021 and 2022, based upon the number of cars parked on a monthly basis at the subject garage, and number of cars parked on a daily basis, and applicable parking costs: "At all relevant times, EK Premier had: (1) employees, including Plaintiff, who were engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, as described above; and (2) an annual gross volume of sales in excess of $500,000.00. In that regard, Plaintiff, who was directly involved in collecting parking fees from customers, recalls the following concerning EK Premier's revenues: EK Premier stored approximately 70 gas-powered autos on average, at a cost of $350 per month; EK Premier stored an additional approximately 10 Tesla autos on average, at a monthly cost of $450 per month; EK Premier received fees from approximately 10 employees of the medical practice located in the same building as the parking garage, with each paying $175 per month; an additional approximately ten medical practice employees paid $18 per work day for parking; EK Premier also received approximately $400 per day on which nearby events took place, and there were approximately 12 such events per month; approximately 25 medical practice patients each paid EK Premier $18 per day each day; and an additional approximately 28 people parked their cars with EK Premier each day not associated with either events or the medical practice, paying $18 per day. In all, Plaintiff estimates annual revenues for EK Premier at over $600,000 per year." Id. ¶17.

EK Premier attacks Plaintiff's allegations as being based upon information and belief. That attack is based upon a misreading of the FAC. The only allegation pled based upon information and belief regarding the jurisdictional issue relates to the fact that the vast majority of the cars were produced outside New York. FAC ¶16. It is entirely proper to base that allegation upon information and belief, since it is commonly understood that the vast majority of autos driven in the US are made somewhere other than in New York state.

EK Premier cites Herrera v. Genao, 2018 WL 3323819, (SDNY July 5, 2018) in support of its position that Plaintiff's FAC allegations concerning jurisdiction are inadequate. Herrera, however, was decided after a trial during which the plaintiff, a parking lot attendant, introduced no evidence regarding the interstate movement of the cars parked at the subject lot. Here, Plaintiff has plainly alleged specific facts from which enterprise and individual coverage can be established. Thus, the Herrera decision is inapposite.

Similarly, Owusu and Jones decisions cited by EK Premier are readily distinguishable, as the complaint in each of those cases lacked the specific factual detail included in the FAC, as described above. For the foregoing reasons, EK Parking's anticipated motion to dismiss pursuant to FRCP 12(c) would be futile.

**EK Premier's Potential Motion for Summary Judgment Would be Futile**

EK Premier in the alternative argues that summary judgment should be granted regarding jurisdiction, claiming that there is no disputed fact issue with respect to the amount of revenues generated by EK Premier during the relevant years or whether EK Premier and/or Plaintiff engaged in interstate commerce. EK Premier is incorrect. Both of those issues involve disputed fact issues. In that regard, although EK Premier has submitted documentation reflecting revenues of much less than $500,000 annually, it has admitted that it has misrepresented its income, in that the documentation prepared by EK Premier's accountant was based upon the bank records of the entity, and cash revenues were not reflected in those bank records. Kalendarev Tr. at p. 50-54. Additionally, Plaintiff has testified that, based upon his personal observations, EK Premier's claims regarding its revenues are false, and in fact EK Premier generated approximately $600,000 per year during each of the years 2021 and 2022, based upon the number of cars parked on a monthly basis at the subject garage, and number of cars parked on a daily basis, and applicable parking costs. Sanchez Declaration ¶5. Similarly, the testimony of Plaintiff concerning the interstate movement of vehicles parked at the EK Parking lot supports the argument that both he and EK Premier engaged in interstate commerce. Thus, EK Premier's anticipated summary judgment motion would be futile.

Respectfully submitted,

/s/

Vincent E. Bauer